## HUTCHENS v. COVERT ET AL.

[No. 5,854. Filed November 2, 1906. Rehearing denied December 21, 1906. Transfer denied January 29, 1907.]

1.   STATUTES.—*Construction.—Intent.*—The words of a statute should be given such a construction as to carry out the legislative intent. p. 386.

2.   MUNICIPAL CORPORATIONS.—*Statutes.—Police Pensions.*—The act of 1903 (Acts 1903, p. 102) was intended to give to the widows and orphans of policemen gratuities (1) where such policemen died while performing duties enjoined upon them, and (2) where they died from natural causes while in service or after the term of service. p. 386.

3.   STATUTES.—*Police Pensions.—Intention.*—The act of 1903 (Acts 1903, p. 102), granting pensions to policemen and their widows, where such policemen were killed or disabled "while in line of duty," was not intended to put a premium upon reprehensible conduct of policemen. p. 386.

4.   SAME.—*Interpretation.—Subsequent Statutes as Aid.*—Subsequently passed statutes upon the same subject-matter may be looked to as an aid in the interpretation of a prior statute. p. 387.

5.   WORDS AND PHRASES.—*Police Pensions.—"Line of Duty."*—The phrase "line of duty" denotes that the act of duty performed must have causal relation to the wound, injury or disease producing disability or death. p. 388.

6. MUNICIPAL CORPORATIONS. — *Police Pensions.* — *"In Line of Duty."*—*Suicide.*—A policeman who, while acting as such, commits suicide, does not come to his death "while in the line of duty," as provided by clause three of section seven of the act of 1903 (Acts 1903, p. 102); and his widow is not entitled to a pension on account of such death.  p. 391.

7. INSURANCE.—*Death by Accident.*—*Suicide.*—Death by suicide while insane is an "accident" within the meaning of a policy of insurance.  p. 392.

8. PLEADING.—*Complaint.*—*Police Pensions.*—*Suicide.*—*"Line of Duty."*—*Causal Connection.*—A complaint by the widow of a policeman who, while on duty, became insane and committed suicide, for a pension as provided by clause three of section seven of the act of 1903 (Acts 1903, p. 102), must show that such insanity was caused by the performance of some duty.  p. 392.

From Gibson Circuit Court; *O. M. Welborn,* Judge.

Action by Rosa D. Hutchens against Charles G. Covert, as Mayor of the City of Evansville, and others. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*John W. Spencer, John R. Brill* and *George K. Denton,* for appellant.

*Albert W. Funkhouser, Frederick M. Hostetter* and *Arthur F. Funkhouser,* for appellees.

WILEY, J.—Action by appellant as widow of Thomas H. Hutchens, a deceased member of the police force of the city of Evansville, to recover the funeral benefits and pension provided for in the act approved February 27, 1903 (Acts 1903, p. 102). To appellant's amended complaint a demurrer was sustained, and the only question presented by this appeal is the correctness of that ruling.

The amended complaint is brief, and we set out its material averments as follows: "That on September 18, 1903, Thomas H. Hutchens, who was, and had been for more than twenty years prior thereto, a member of the police force of said city, was regularly detailed for duty at the Tri-State Fair Grounds in and adjoining said city, and in obedience thereto he entered upon the discharge of

his duties as a policeman and as member of, said police force at said place on said day; that at said time and place, and during the hours he was on duty, and while of unsound mind, he shot Fred Heuke, chief of police of said city, Fred H. Brennecke, a police captain of said city, Jacob Lutz, a bystander, and himself, thereby dangerously wounding said Heuke, Brennecke and Lutz, and thereby instantly killing himself, thereby committing suicide, all of said shooting and wounding being so done and committed at once and as a part of the same transaction, and with the insane purpose and intention of killing said persons and of killing himself, and wholly as a manifestation of said unsoundness of mind, and without any provocation or other reason or cause; that this plaintiff is the widow of said Thomas H. Hutchens, and that she has not remarried since the death of her husband; that plaintiff has one child, the daughter of plaintiff and deceased, to wit, Helen E. Hutchens, who is six years of age; that plaintiff has paid the funeral expenses of said deceased; that by resolution of said board the funeral expenses of members of said police force are fixed at $75; that the defendants and said board have refused and still refuse to recognize any rights upon plaintiff's part under said act, and have refused and still refuse to pay her anything; that there is and has been since the time of the organization of said board sufficient money in said police pension fund to pay all claims against it in full. Wherefore, from the facts above pleaded, plaintiff says that under the provisions of the aforesaid act she is entitled to $20 per month for herself and $6 per month for said child from the date of the death of said deceased to the present time, and that she is entitled to the amount provided by a resolution of said board, and by virtue of the by-laws thereof, for the funeral expenses of said deceased, to wit, the sum of $75, and that from the facts above pleaded there is now due and owing to plaintiff the sum of $500, for which amount plaintiff demands judgment," etc.

The statute under which appellant asserts her right to recover is a new one, and we deem it important, to a correct solution of the question involved, to refer to its most salient provisions. Section one provides that a police pension fund shall be created in cities of over 50,000 and less than 100,000 inhabitants, and designates who shall constitute the board of trustees for such fund. Sections two, three and four prescribe the powers of the board and the duties of the respective officers thereof. Section five provides for the creation of the fund, out of which the benefits and pensions are to be paid. One of the means thus provided for is by an assessment against each policeman, which is to be deducted from his salary and placed to the credit of such fund. Section six provides for the investment of the fund. Section seven provides for the retirement of a policeman under certain conditions. One of the conditions is that if he becomes permanently disabled, physically or mentally, because of injury or disease contracted while in the performance of his duty, he may be retired, and in that event he is to be paid out of the fund a sum equal to one-half of the salary he was receiving at the time of his retirement. It is further provided that upon the death of "any member of such police force, active or retired, while in the line of his duty or from natural causes, there shall be paid for funeral expenses of such deceased member a sum not to exceed $100, and should such deceased member leave a widow, or child or children under the age of sixteen years, or both, then there shall be paid to such widow out of said fund $20 per month, and such children shall receive $6 per month until they arrive at the age of sixteen years respectively, to be paid to the mother of such children, if living, for their benefit," etc. Other provisions of the act have nothing to do with the question involved, and it is unnecessary to refer to them.

The decision rests upon the question whether appellant's husband lost his life "while in the line of his duty," within

the meaning of that phrase, as used in the statute. Her counsel affirm that he did. If they are right in their affirmation, the complaint states a cause of action, for all other essential averments under the statute are present. It may be conceded that the deceased was where he had a right to be, for he had been detailed by a superior officer for service at the Fair Grounds.

1. What is meant by the expression, "while in the line of his duty," as used in the statute? It should be given a reasonable meaning and one that will carry out the intention of the legislature.

2. The legislature evidently used this language with the thought in view of granting to policemen who came within the provisions of the statute, and to their widows and orphan children, certain gratuities, under two conditions: (1) If death resulted while in the performance of a duty enjoined upon such policemen. (2) If they died from natural causes, while in the service, or after the term of service, as provided by statute.

3. The expression "while in line of his duty" should be read in the light of legislative intent, if that is ascertainable from the whole body of the act. We think it is. It was not intended by the legislature to put a premium upon reprehensible conduct of a policeman. A policeman would be in the "line of his duty" while walking upon his "beat," or while going to any point where his duty called him. But suppose while upon his beat he should meet a person against whom he held a grudge, and without provocation or cause he should assault him, and in self-defense such person should take such policeman's life; it could not, in reason, be said that he came to his death while in the line of his duty, or while in the performance of his duty. Again, a policeman's duty might call him to where intoxicating liquors are sold to be drunk as a beverage, and while there suppose he should

partake of such liquors until he became intoxicated, and while in that condition go upon the street and be killed, as a direct result of his intoxication; it would be a travesty to say that his death resulted from the performance of a duty enjoined upon him, or that he was killed "in the line of his duty." In neither of the illustrations given would there be any causal connection between the facts resulting in his death and the fact that he was a policeman; nor would there be any causal connection between the facts resulting in his death and the performance of a duty enjoined upon him. In either event his death would not be the result of his being a policeman, or the result of his attempting to discharge any duty as such.

In the act approved March 6, 1905, entitled: "An act concerning municipal corporations," the act of 1903, *supra,* was repealed (Acts 1905, pp. 219, 349, §178, §3602 Burns 1905), expressly preserving any right that had accrued under it. In the act of 1905, *supra,* the entire subject of pensions and benefits to policemen, and their widows and orphans, is covered. That part of the new statute which covers the same matter as the one under which this action is prosecuted, is as follows: "Upon the death of any member of such police force, active or retired, while in the line of duty, and as a result of the performance of his duty, or for natural causes, there shall be paid," etc. The beneficiary provisions of the act of 1905, *supra,* are identical with those of 1903, *supra.*

In this connection, there is a rule of construction and interpretation of statutes which is pertinent here. That rule is that a subsequent statute upon the same subject-matter as a prior one may be considered to aid in the interpretation of such former statute. 26 Am. and Eng. Ency. Law (2d ed.), 624. This is the rule both in England and America. *Clarke* v. *Powell* (1833), 4 Barn. & Ad. 846; *Smith* v. *Lindo* (1858), 4 C. B. N. S. *395, *404; *Grill* v. *General Iron, etc., Co.*

(1866), L. R. 1 C. P. *600, *611; *Rolle v. Whyte* (1868), L. R. 3 Q. B. *286, *298; *Morgan v. London, etc., Omnibus Co.* (1883), 12 Q. B. D. 201, 207; *Alexander v. Mayor, etc.* (1809), 5 Cranch (U. S.) *1, 13 L. Ed. 19; *United States v. Freeman* (1845), 3 How. (U. S.) 556, 11 L. Ed. 724; *Cape Girardeau County Court v. Hill* (1886), 118 U. S. 68, 6 Sup. Ct. 951, 30 L. Ed. 73; *Lawrence v. People, ex rel.* (1900), 188 Ill. 407, 58 N. E. 991; *Matter of Livingston* (1890), 121 N. Y. 94, 24 N. E. 290; *Commonwealth v. Sylvester* (1866), 13 Allen 247. A single quotation from the case of the *United States v. Freeman, supra,* will illustrate the force of the rule just stated, which is supported by the authorities cited. Mr. Justice Wayne, in delivering the opinion of the court, said: "The correct rule of interpretation is, that if divers statutes relate to the same thing, they ought to be taken into consideration in construing any one of them, and it is an established rule of law, that all acts *in pari materia* are to be taken together, as if they were one law. *Earl of Ailesbury v. Pattison* (1778), 1 Doug. 28; *King v. Commissioners, etc.* (1788), 2 T. R. 387; *King v. Mason* (1788), 2 T. R. 581; *King v. Inhabitants of Bowness* (1815), 4 Mau. & Sel. 210. If a thing, contained in a subsequent statute be within the reason of a former statute, it shall be taken to be within the meaning of that statute; *Sir William Moore's Case* (1704), 2 Ld. Raym. 1028; and if it can be gathered from a subsequent statute *in pari materia,* what meaning the legislature attached to the words of a former statute, they will amount to a legislative declaration of its meaning, and will govern the construction of the first statute."

So far as we are advised, statutes of the United States granting pensions to disabled soldiers and seamen, and in case of death, to widows, etc., are the only ones using the words, "in the line of his duty." This expression has been under consideration many

times in passing upon claims for pensions. In 1855, Caleb
Cushing, Attorney-General of the United States, gave to
the department of the interior an opinion in which he put
an interpretation upon such expression, and in which he
said: "The statute employs a phrase which is definite,
though comprehensive, 'the line of duty.' He who con-
tracts disease or dies in consequence of the ordinary per-
formance of his military duty or in the performance of any
special act of military duty, whether at the moment of per-
formance he were on duty or off duty, in active service or
on furlough, of habits virtuous or habits vicious, gallantly
fighting his country's enemy, or expiating an offense in the
guard-house or prison bay—he, I say, who in these or any
other circumstances, contracts disease in the performance
of an act of duty, contracts it 'in the line of his duty.' On
the other hand, neither the bad man, who dies of his incor-
rigible vices, nor the good man, who, at the full maturity
of blameless life, dies in the course of nature of any of the
maladies incident to old age, can be said to die, of 'disease
contracted while in the line of duty.' In fine, the phrase,
'line of duty,' is an apt one, to denote that an act of duty
performed must have relation of causation mediate or im-
mediate, to the wound, the casualty, the injury, or the dis-
ease producing disability or death." 7 Op. Attys.-Gen.,
149, 2 Dec. Dept. Int. Relating to Pension Claims,
etc., 403.

In *Rhodes* v. *United States* (1897), 79 Fed. 740, 25 C.
C. A. 186, which was an action to recover from Rhodes
what was claimed had been paid to him by reason of his
fraudulent representations, the court approved the follow-
ing instruction: "(2) If, now, under the foregoing gen-
eral directions, you find either that the defendant never
had the disease in question before he enlisted, or that he
had been afflicted therewith, but had entirely recovered
therefrom, before his enlistment, then, inasmuch as there
appears to be no doubt but what he suffered from the

disease while in the service, you must next inquire whether he contracted it in the line of duty. This means that he must have contracted the disease as a result of his service, or as a result or by reason of the fact that he was in the service. The service must have been the cause of the disease, not merely coincident in time. An attack of epilepsy, for instance, while a soldier in the army, not resulting from any connection with the army, or any risk, hazard, or danger thereof, but as a result of an hereditary predisposition, would not entitle a soldier to a pension on the ground that he contracted that disease while in the service, because such disease would not have been contracted in the line of duty." The court in that case adopted the interpretation of the words "in line of duty" put upon them by Attorney-General Cushing, and further said: "The fact that after this construction congress has retained this expression for more than forty years, although it has repeatedly revised and amended the pension laws, amounts to a demonstration that Mr. Cushing and the court below properly interpreted its meaning."

The claim of Gillespie for pension further illustrates the interpretation of the words "in line of duty." *In re Gillespie* (1888), 2 Dec. Dept. Int. Relating to Pension Claims, etc., 16. The claim was based upon an injury claimant received in an altercation with a member of his company, in which the latter struck Gillespie upon the head with a board and injured his skull. The claim was disallowed, upon the ground that the injury was not received while he was in "the line of duty," and in disposing of the case it was said that the fact that claimant did not sustain a culpable relation to the cause of his disability does not, by reason of the same, affect his title to pension. The question involved in the claim is not whether claimant was to blame for the conduct of his assailant, but whether the blow struck by the latter was a necessary or even a reasonable incident of line of duty in the service.

In the case of Harding's application for a pension (*In re Harding* [1888], 2 Dec. Dept. Int. Relating to Pension Claims, etc., 232), where his injury was a partial paralysis of the brain caused by a sabre cut or blow while on a boat, and while asleep in his bunk, being mistaken by a comrade for another, the claim was rejected upon the ground that the injury was not received while in "service and in the line of duty." In passing upon the claim it was said: "The department holds in this and all similar cases that the wound, injury or disease must be the natural, probable, or proximate result, either mediate or immediate, of soldier's military duty, and that the phrase 'line of duty' denotes that an act of duty performed in order to entitle claimant to a pension must have relation of causation, mediate or immediate, to the wound or injury received or the disease contracted, and which produced said disability or death. It cannot be reasonably claimed that the assault upon the claimant by his comrade, the result of mistaken identity, was the logical incident or probable effect of duty performed in the service. The question is not whether the soldier was in line of duty at the time he received his injury, in the sense that he was not disobeying any military law, rule, or regulation, or guilty of any culpable negligence, but rather what is the quality or condition of the act which produced the injury of which complaint is made? Claimant was not wounded or disabled because he was a soldier."

In the claim of Ammerman for pension (*In re Ammerman* [1886], 1 Dec. Dept. Int. Relating to Pension Claims, etc., 5) the claim was rejected on the ground that the cause of the disability or of death giving title to pension must in some manner pertain to, and have a natural and logical connection with, the military service and to the line of duty in said service.

Upon the authorities and principle, we are forced to the conclusion that the facts pleaded do not show that the de-

ceased came to his death while in the line of his duty nor in the discharge of any duty as a policeman.

This disposes of the case except as to one proposition. It is urged by counsel for appellant that the death of the deceased in the manner detailed in the complaint was death by accident, upon the theory that death of an insane man by suicide is death by accident, "just as much an accident as if he had fallen from the top of a house." This proposition is affirmed by some authors and decisions. Bacon, Benefit Soc. (3d ed.), §496; *Accident Ins. Co.* v. *Crandal* (1887), 120 U. S. 527, 7 Sup. Ct. 685, 30 L. Ed. 740, and authorities cited.

This rule, however, is not the test by which the question before us is to be determined. There is no averment in the complaint that the insanity of the deceased was caused by reason of his being a policeman, nor that it resulted from the discharge of any duty as such. An insane man is irresponsible for his actions, and it is upon this basis that suicide by an insane person is held to be an accident, as indicated by the authorities just cited. The question of some difficulty here is that we are dealing with a special statute which gives certain rights upon specific conditions. One of the conditions that gives such right to the widow and orphans of a policeman is that the latter should come to his death while in the line of his duty, and, as we have seen, "as a result of the performance of his duty," and that there must be some connection between the death and the "line of duty" or the "performance of duty." Going to the complaint we find an entire absence of any connection between the act which produced death and the performance of any duty enjoined upon the deceased. In other words, the complaint does not charge that the insanity was the result of the performance of any duty. This, it seems to us, is essential. In claims for pensions under the laws of the United States, based upon insanity, or upon death from suicide while in a state of insanity, "it must

be shown that the insanity was the result of, or incidental to, acts of duty," before it can be said that the soldier died "while in the line of duty." 7 Op. Attys.-Gen., 149, 2 Dec. Dept. Int. Relating to Pension Claims, etc., 403, 407; *In re Stack* (1888), 2 Dec. Dept. Int. Relating to Pension Claims, etc., 153; *In re Gallagher* (1889), 2 Dec. Dept. Int. Relating to Pension Claims, etc., 332. Attorney-General Cushing in his opinion, said: "Thus, in one of the cases referred to in your letter, and upon which you have already ruled, a case of suicide, it was held, and properly, not only that suicide is not of itself a pensionable cause of death, but also that, if the suicide is alleged to have been produced by insanity, and thus insanity be put forward as the *causa causans,* then it must be shown that the insanity was the result of, or incidental to, acts of duty."

A case directly in point is that of *In re Gallagher, supra,* where it appeared there was an entire failure of proof connecting the insanity or suicidal mania of the soldier with his army service, and in passing upon the claim it was said: "This is a missing link in the chain of evidence which is absolutely essential to make out a proper case for the allowance of pension, and, unless supplied, it is necessarily fatal to the claim. It seems to be reasonably certain, from the testimony on file, that the soldier's death resulted from poisoning by arsenic administered by himself with suicidal intent while the victim of dementia or mania, and when, therefore, he was irresponsible for his actions; and, also, that he had suffered more or less, at intervals, from attacks of said dementia or mania for some years subsequent to his discharge from the service and prior to his death." These authorities settle the question against appellant. We are clearly of the opinion that, under the facts pleaded, appellant has not brought herself within the statute, and that she has no right of recovery.

Judgment affirmed.