**FORT WAYNE PATROLMEN'S BENEVOLENT ASSOCIATION, INC., and Michaeline Jones, Appellants–Plaintiffs,**

v.

**The CITY OF FORT WAYNE, Indiana, Appellee–Defendant.**

No. 02A05–0807–CV–424.

Court of Appeals of Indiana.

March 25, 2009.

Transfer Denied June 25, 2009.

Joshua A. Burkhardt, Richard E. Beers, Beers Mailers Backs & Salin, LLP, Fort Wayne, IN, Attorney for Appellants, Fort Wayne Patrolmen's Benevolent Association, Inc., and Michaeline Jones.

James P. Fenton, Patrick L. Proctor, Kathryn A. Brogan, Eilbacher Fletcher, LLP, Fort Wayne, IN, Attorneys for Appellee, The City of Fort Wayne.

Thomas K. Downs, Karen L. Arland, Ice Miller LLP, Indianapolis, IN, Attorneys for Amicus Curiae Indiana Association Of Cities And Towns, and Indiana Municipal Lawyers Association.

## OPINION

BRADFORD, Judge.

The Fort Wayne Patrolmen's Benevolent Association, Inc. ("FWPBA") and Michaeline Jones (collectively, "Appellants") appeal from the trial court's order granting summary judgment in favor of the City of Fort Wayne ("City"). Appellants raise two issues on appeal.

I. Whether Fort Wayne Police Officer Michaeline Jones was injured "while performing her duty" as a police officer pursuant to Indiana Code section 36–8–4–5 (2007) when she was injured as a result of an accident that occurred while she was driving home, after the conclusion of her shift as a police detective, in her unmarked home fleet police vehicle.

II. Whether the parties' Collective Bargaining Agreement ("CBA"), which provides that employees who suffer an injury while performing an assigned duty or who contract an illness caused by the performance of this duty shall be entitled to any and all benefits provided by Indiana Code section 36–8–4–5, creates any rights or obligations greater than those provided by the statute itself.

Concluding that Jones was not injured "while performing her duty" pursuant to Indiana Code section 36–8–4–5, and that the parties' CBA did not create any right or obligation greater than those provided by the statute itself, we affirm.

## FACTS AND PROCEDURAL HISTORY

The FWPBA is the duly authorized union representative for patrolmen for the Fort Wayne Police Department and is charged with the responsibility of representing its members for the purpose of collective bargaining with the City. Officer Jones is employed by the City as a police officer and is a member of the FWPBA. Officer Jones has been assigned to the Detective Bureau since 1993.

In 1994, the City instituted the Home Fleet Vehicle Policy ("HFV Policy"). Under the HFV Policy, Fort Wayne police officers are permitted to drive their City-owned police vehicles for personal use while off-duty. One main purpose for in-

stituting the HFV Policy was to increase police visibility. The City is not required by law or by the CBA to have an HFV Policy.

Officer participation in the HFV Policy is voluntary, and officers participating in the HFV Policy must agree to adhere to certain rules and regulations governing both their "on-duty" and "off-duty" use of the City-owned police vehicles. For instance, the police radio must be turned on whenever the police vehicle is in use, officers must be armed when operating the police vehicle, only the officer is permitted to operate the vehicle, and while off-duty, both the officer and any passengers must wear appropriate clothing when traveling in the vehicle. Additionally, officers must keep their vehicles clean and have certain maintenance performed by the City during on-duty hours. Although officers are not required to constantly switch between "on-duty" and "off-duty" status, officers participating in the HFV program are required to either stop or request assistance from an on-duty officer if, while off-duty, the officer encounters a stranded motorist. An officer becomes eligible for overtime pay if the officer engages in police work, effectively going "on-duty" during off-duty hours. Violations of the HFV Policy may result in "revocation of the privilege of off-duty use of a home fleet vehicle." Appellants' App. p. 188.

On December 15, 2006, Officer Jones, who was a participant in the HFV program, left work and began her ten-to-fifteen-minute drive home in her police vehicle. Officer Jones did not have orders to engage in any police work that evening. While driving home, Officer Jones was involved in an accident approximately three blocks from police headquarters. As a result of the accident, Officer Jones suffered non-fracture injuries to her wrist and neck. Officer Jones sought reimbursement for her out-of-pocket medical expenses from the City. The City denied Officer Jones's request for reimbursement, asserting that she was off-duty at the time of the collision.

On May 17, 2007, Appellants filed suit against the City seeking damages and a declaratory judgment that the City was liable for injuries sustained by off-duty police officers who were involved in an accident while operating a home fleet vehicle pursuant to the HFV Policy. The parties filed competing motions for summary judgment. The trial court granted the City's motion for summary judgment and denied Appellants' motion for summary judgment. Appellants now appeal the trial court's order granting summary judgment in favor of the City.

## DISCUSSION[1]

### Standard of Review

On appeal from the grant or denial of summary judgment, our standard of review is *de novo*. *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 531 (Ind.2006). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Am. Home Assurance Co. v. Allen*, 814 N.E.2d 662, 666 (Ind.Ct.App.2004), *trans. dismissed.* We construe all facts and reasonable inferences drawn therefrom in favor of the non-moving party. *Allen*, 814 N.E.2d at 666. The burden is on the appellant to prove

1. We held oral argument in this case on February 25, 2009, at Lawrence North High School in Indianapolis. We wish to thank counsel for their excellent advocacy and extend our appreciation to the faculty, staff, and students of Lawrence North for their fine hospitality.

that the trial court erred in determining that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Ind. Farmers Mut. Ins. v. Blaskie,* 727 N.E.2d 13, 15 (Ind.Ct.App.2000). The fact that the parties made competing motions for summary judgment does not alter our standard of review. *Id.*

■ Initially, we note that the parties conceded at oral argument that there are no issues of material fact that would preclude summary judgment, instead arguing that the interpretation of Indiana Code Section 36–8–4–5 is at issue. Where, as here, the relevant facts are not in dispute and the interpretation of a statute is at issue, such statutory interpretation presents a pure question of law for which summary judgment disposition is particularly appropriate. *Sanders v. Bd. of Comm'rs of Brown County,* 892 N.E.2d 1249, 1252 (Ind.Ct.App.2008), *trans. denied.*

## I. Whether Officer Jones was Injured "While Performing Her Duty" Pursuant to Indiana Code Section 36–8–4–5

■ Appellants contend that the trial court erred in granting summary judgment in favor of the City because Officer Jones, in driving her home fleet police vehicle pursuant to the HFV Policy, was "performing her duty" at the time of her accident and was therefore injured while in the line of duty for the purposes of Indiana Code section 36–8–4–5. Conversely, the City contends that Officer Jones is not entitled to compensation under Indiana Code section 36–8–4–5 because Officer Jones's use of her home fleet vehicle was strictly personal at the time of the accident. Therefore, the question presented in the instant matter is whether Officer Jones was injured "while performing her duty" pursuant to Indiana Code section 36–8–4–5.

■ In addressing the meaning of "while performing Officer Jones's duty" as used in Indiana Code section 36–8–4–5, we recall several rules of statutory construction. *See United Rural Elec. Membership Corp. v. Ind. Mich. Power Co.,* 716 N.E.2d 1007, 1013 (Ind.Ct.App.1999), *trans. denied.*

When interpreting a statute, appellate courts independently review a statute's meaning and apply it to the facts of the case under review. If a statute is unambiguous, that is, susceptible to but one meaning, we must give the statute its clear and plain meaning. If a statute is susceptible to multiple interpretations, however, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results.

*Bolin v. Wingert,* 764 N.E.2d 201, 204 (Ind.2002).

■ We note that "[t]he goal of statutory construction is to determine, give effect to, and implement the intent of the General Assembly." *Sanders,* 892 N.E.2d at 1252. "When construing a statute, the legislature's definition of a word binds us." *Rural Elec.,* 716 N.E.2d at 1013. If the legislature has not defined a word, we give the word its common and ordinary meaning, and, in doing so, may consult English language dictionaries. *Id.* at 1013–14. Furthermore, in seeking to give effect to the legislature's intent, we read an act's sections as a whole and strive to give effect to all of the provisions so that no part is held meaningless if it can be reconciled with the rest of the statute. *Id.* at 1014. We presume that our legislature intended for its language to be applied in a logical

manner consistent with the statute's underlying policy and goals. *Id.* "Statutes relating to the same general subject matter are in *pari materia* and should be construed together so as to produce a harmonious statutory scheme." *Sanders,* 892 N.E.2d at 1252.

Indiana Code section 36–8–4–5 creates a statutory obligation on behalf of a city to pay for the care of its police officers and firefighters who are injured or contract an illness as a result of the performance of their duties. Specifically, Indiana Code section 36–8–4–5 provides that "[a] city shall pay for the care of a police officer or firefighter who suffers an injury while performing the person's duty." Because the legislature did not define "while performing the person's duty" for the purposes of Indiana Code section 36–8–4–5, we must determine whether the legislature intended for this statute to encompass the acts performed by Officer Jones. Therefore, we look to interpretations of similar statutory provisions, dictionaries, and the statute's underlying policies and goals to determine its meaning. *Rural Elec.,* 716 N.E.2d at 1014.

### A. Prior Interpretation of Similar Statutory Provision

■ As is stated above, one method used for the purpose of interpreting the meaning of a statute is considering prior interpretations of similar statutory provisions. In *Hutchens v. Covert,* 39 Ind.App. 382, 386–87, 78 N.E. 1061, 1062 (1906), *trans. denied,* this court previously interpreted the meaning of the statutory phrases "while performing a duty" and "while in the line of duty" as they related to the statute allowing for the recovery of funeral and pension benefits for police officers. In *Hutchens,* this court opined that "[t]he expression 'while in the line of his duty' should be read in light of legislative intent, if that is ascertainable from the whole body of the act," and explained that:

A policeman would be in the "line of his duty" while walking upon his "beat," or while going to any point where his duty called him. But suppose while upon his beat he should meet a person against whom he held a grudge, and without provocation or cause he should assault him, and in self-defense such person should take such policeman's life; it could not, in reason, be said that he came to his death while in the line of his duty, or while in the performance of his duty. Again, a policeman's duty might call him to where intoxicating liquors are sold to be drunk as a beverage, and while there suppose he should partake of such liquors until he became intoxicated, and while in that condition go upon the street and be killed, as a direct result of his intoxication; it would be a travesty to say that his death resulted from the performance of a duty enjoined upon him, or that he was killed "in the line of duty."

*Id.,* 78 N.E. at 1062. The *Hutchens* court further opined that:

In neither of the illustrations given would there be any causal connection between the facts resulting in his death and the fact that he was a policeman; nor would there be any causal connection between the facts resulting in his death and the performance of a duty enjoined upon him. In either event his death would not be the result of his attempting to discharge any duty as such.

*Id.* at 387, 78 N.E. at 1062.[2] The rationale employed by the *Hutchens* court suggests

---

2. On the *www.westlaw.com* database and in West Publishing's printed Northeastern Re-

porter, this passage reads, in relevant part "In neither of the illustrations given would

that the City would be liable for Officer Jones's injuries if she demonstrated any causal connection between the facts resulting in her injury and either the fact that she was a police officer or the performance of a duty enjoined upon her.

## B. Dictionary Definition of "While Performing a Duty"

 Another method used in trying to interpret the meaning of a statute is considering the common dictionary definition of the term or phrase in question. *See id.* Therefore, we shall try to determine the common dictionary definition for the phrase "while performing a duty." "While" may be defined as "during which time." Webster's Third New International Dictionary 2604 (1964). "Perform" may be defined as "to carry out or bring about." *Id.* at 1678. "Duty" maybe defined as "obligatory tasks, conduct, service, or functions enjoined by order or usage according to rank, occupation, or profession" or an "assigned participation in [an] activity." *Id.* at 705. Reading these definitions together, "while performing a duty" may be defined as: "during which time as one carries out obligatory tasks enjoined by her assigned participation in an activity."

## C. Application of the Facts in the Instant Matter

The record establishes that at the time of the incident in question, Officer Jones was driving her home fleet police vehicle in accordance with the requirements of the HFV Policy. Specifically, Officer Jones's police radio was on and she was armed.[3]

Appellants contend that, in addition, Officer Jones was required to monitor the area for crimes in progress, and respond to emergency calls, vehicular accidents, and other citizen requests as a condition of the HFV Policy. However, the record also established that Officer Jones candidly admitted that she was not actively engaged in any police work during her drive home and that her operation of her home fleet vehicle had nothing to do with her accident. Officer Jones, who drove an unmarked police vehicle, also admitted that she was not on any mission or errand for the Police Department, and she was not engaged in the enforcement of any laws or in assisting any citizen. Additionally, Officer Jones admitted that she was not compensated for her drive home, nor did she expect any compensation, she was not required to "check in" or report her whereabouts, and the City neither caused her to travel to the site of the accident nor caused the accident. In fact, her deposition testimony established that Officer Jones believed that the incident would have occurred irrespective of whether she was driving her unmarked city police vehicle or her personal vehicle. These facts suggest that no causal connection existed between the facts giving rise to Officer Jones's injuries and either the fact that she was a police officer or any duty enjoined upon her by her participation in the HFV program.

## D. Public Policy as an Indicator of Legislative Intent

Likewise, there is no indication that the legislature intended to grant police officers

---

there be any *casual* connection between the facts resulting in his death and the fact that he was a policeman; nor would there be any casual connection between the facts resulting in his death and the performance of a duty enjoined upon him." (Emphasis added). Given that casual may be defined as haphazard, this error is troubling in that it, at best,

renders the passage nonsensical, and, at worst, reverses its meaning. We will continue to exercise caution when citing to nonofficial sources.

**3.** Officer Jones's police radio automatically turned on when she started her vehicle.

and firefighters this broad protection, at public expense, while not actively performing their duties. Indiana cities are currently facing shrinking municipal revenues. Common sense suggests that if these cities were suddenly faced with increased liability for the injuries suffered by off-duty police officers while driving their take-home police vehicles, many cities would be forced to decide whether to reduce staffing, cut services, and/or abandon the policy allowing police officers to drive their city-owed police vehicles while off-duty. We do not believe that our legislature would have intended these sorts of reductions to public safety when it crafted the language of Indiana Code section 36–8–4–5.

Therefore, in light of the this court's previous interpretation of the phrase as explained in *Hutchens*, considered with the general dictionary definition of the phrase "while performing a duty," and the public policy considerations favoring the more limited interpretation adopted by the trial court, we conclude that Officer Jones's compliance with the minimal requirements that her police radio be turned on and that she be armed was insufficient to establish that she was injured "while performing a duty" for the purposes of Indiana Code section 36–8–4–5. Officer Jones is therefore not entitled to relief under Indiana Code section 36–8–4–5.

Moreover, to the extent that Appellants claim that worker's compensation case law, which they concede does not apply to the instant case, may be instructive in determining whether Officer Jones was performing a duty at the time of her accident, we disagree. Here, it is undisputed that Officer Jones is not covered by worker's compensation. The Indiana General Assembly explicitly stated that in Indiana, police officers, like Officer Jones, who are also members of a police officers' pension fund are not covered by worker's compensation. Ind.Code § 22–3–2–2 (2007). Therefore, in light of the General Assembly's explicit rejection of worker's compensation law from cases involving police officers, we conclude that it would be improper to apply worker's compensation principles to the instant matter.

## II. Whether Officer Jones is Entitled to Relief Under the Parties' CBA

 Appellants also contend that the trial court erred in granting summary judgment in favor of the City because Officer Jones is entitled to relief under the parties' CBA. The City argues in response that the contractual language employed in the CBA is clear and unambiguous and provides no rights or obligations apart from those established by Indiana Code section 36–8–4–5.

Absent ambiguity, the terms of a contract will be given their plain and ordinary meaning. The terms of a contract are not considered ambiguous merely because controversy exists between the parties concerning the proper interpretation of terms. Where terms are clear and unambiguous, they are conclusive and this Court will not construe the contract or view extrinsic evidence, but will instead apply the contractual provisions.

*George Uzelac & Assocs., Inc. v. Guzik*, 663 N.E.2d 238 (Ind.Ct.App.1996), *trans. denied.*

 Article 52 of the parties' CBA provides in pertinent part that "Employees who suffer an injury while performing [an] assigned duty or who contract an illness caused by the performance of [a] duty shall be entitled to any and all benefits *provided* by I.C. 36–8–4–5." Appellants' App. p. 96 (emphasis added). Nothing in the plain language of the CBA creates any rights beyond those provided by Indiana Code section 36–8–4–5, and Appellants

have designated no evidence suggesting otherwise. The parties' CBA is clear and unambiguous, and it provides Officer Jones with no relief apart from that provided by Indiana Code section 36–8–4–5. Officer Jones is therefore not entitled to any relief from the parties' CBA.

## CONCLUSION

In sum, concluding that Officer Jones was not "performing a duty" within the meaning of Indiana Code section 36–8–4–5 at the time of her accident and that the language of the CBA is clear and unambiguous and creates no contractual obligations on behalf of the City apart from those created by section 36–8–4–5, we affirm the trial court's award of summary judgment in favor of the City.

The judgment of the trial court is affirmed.

MATHIAS, J. concurs.

BAILEY, J. dissenting with opinion.

BAILEY, Judge, dissenting.

I respectfully dissent from the majority's decision to affirm the grant of summary judgment in this matter. I do so because I believe that the majority has too narrowly construed the "performance of duties" language of Indiana Code Section 36–8–4–5, which provides for the care of police officers injured or contracting illness as a result of the performance of duties.

"Duty" has been defined to include "[a]ny action, performance, task, or observance owed by a person in an official or fiduciary capacity." *Black's Law Dictionary* 522 (7th Edition, St. Paul, 1999). Officer Michaeline Jones was injured while (1) she was required to monitor her police radio; (2) she was under a duty to respond to emergency calls, crimes in progress, or vehicular accidents; (3) it was incumbent upon her to maintain both an appropriate appearance and readiness to perform official police duties; and (4) she was in her police vehicle, i.e., her employer's premises. In my view, a police officer in such circumstances is "performing duties" even though a crime is not in progress and the officer is not being paid wages.

As the majority observes, Officer Jones was not entitled to worker's compensation benefits. However, Indiana Code Section 36–8–4–5(a) was enacted as a broader parallel to the Indiana worker's compensation scheme. *See* Ind.Code § 36–8–4–5. Given that the Indiana Worker's Compensation Act is broadly construed to effect its humanitarian purposes, no less should be done for our police officers under the care of the police officers statute. *See United States Steel Corp. v. Brown,* 142 Ind.App. 18, 21–22, 231 N.E.2d 839, 842 (1967) (observing that the words "arising out of and in the course of the employment" as used in the Workmen's Compensation Act should be given a broad and liberal construction in order that the humane purpose of their enactment may be realized).

The majority is understandably cognizant of the need for public entities to engage in cost-saving measures, and I too must acknowledge that "Indiana cities are currently facing shrinking municipal revenues." Op. at 500. However, I do not believe that this is a time to be "penny wise and pound foolish." Moreover, the Home Fleet Program was put into place to not only increase police visibility but to provide ready response if needed by off-duty officers. Ultimately, the goal of the program was to advance public safety at a reduced cost. By attempting to eliminate its duty to Officer Jones, the City is simply trying to further reduce the cost of implementing its stated public policy. Nevertheless, the City is undermining this public policy by reducing the incentive for participation. The decision to do so is certainly

within its prospective prerogative. Retrospectively, Officer Jones was simply performing her duties as a police officer under the terms of the Home Fleet Program and is entitled to the benefits under Indiana Code Section 36–8–4–5(a).