Rheann E. KELLY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 02A03–0310–CR–397.

Court of Appeals of Indiana.

July 14, 2004.

Publication Ordered Aug. 9, 2004.

Transfer Denied Oct. 7, 2004.

P. Stephen Miller, Fort Wayne, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Andrew A. Kobe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Rheann Kelly appeals her convictions for Felony Murder,[1] a felony, Criminal Confinement,[2] a class D felony, Criminal Gang Activity,[3] a class D felony, and Assisting a Criminal,[4] a class D felony.[5] Kelly presents the following issues consolidated for review:

1. Was the evidence sufficient to support Kelly's convictions for felony murder, criminal confinement, criminal gang activity, and assisting a criminal?

2. Did the trial court err in refusing Kelly's jury instructions regarding

---

1. Ind.Code Ann. § 35–42–1–1 (West, PREMISE through 2003 1st Regular Sess.).

2. I.C. § 35–42–3–3 (West, PREMISE through 2003 1st Regular Sess.).

3. Ind.Code Ann. § 35–45–9–3 (West 1998).

4. Ind.Code Ann. § 35–44–3–2 (West 1998).

5. Kelly was also convicted of Battery, a class A misdemeanor, and Abuse of a Corpse, a class D felony, but does not appeal those convictions.

felony murder and criminal confinement?

We affirm in part, reverse in part, and remand.

The facts demonstrate that on August 19, 2002, nineteen-year-old Kelly was drinking tequila at a house in Fort Wayne, Indiana along with Christine Johnston, Kelly's best friend, Christopher Hovis, Kelly's boyfriend, Ronrico Hatch, Johnston's boyfriend, and Brett Marks. At some point, the group's conversation turned to seventeen-year-old Cheri Hartman, an individual who had previously socialized with the group. Approximately a week before the August 19 get-together, Hartman had allegedly made a racially derogatory comment in the group's presence that angered Hatch and had led him to hit her on the back of the head. Hartman called the police and reported the incident, but the group denied Hatch had hit her.

On August 19, Marks informed the group Hartman had threatened to shoot up the house where Hatch was living with his and Johnston's baby and that Hartman had recently flirted with Hovis. Hatch's report angered Kelly who declared her intent to beat up Hartman. The group knew Hartman was working at a local Arby's restaurant, and Kelly called the restaurant and asked the manager what time Hartman finished work that evening. When the manager refused to provide the requested information to Kelly, Marks took the phone and spoke directly to Hartman who informed him her shift ended at 11 p.m. The group decided to wait for Hartman at her home, take her to a secluded area, beat her up, and force her to walk home naked.

Thereafter, the group traveled to Hartman's home in Kelly's blue Chevy Corsica. Kelly and Johnston got out of the car and hid in the bushes while Hovis, Hatch, and Marks waited in the car at a distance. Hartman arrived home, parked her car, and was walking towards her house when Kelly and Johnston confronted her. Kelly asked Hartman if Hartman had flirted with Hovis and when Hartman said she had not, Kelly struck Hartman in the face with her fist, knocking Hartman down. Kelly and Johnston proceeded to punch Hartman while she lay on the ground, pleading with the girls to stop. Hovis, Hatch, and Marks pulled up in Kelly's car and Hatch pulled Hartman into the backseat. The group left Hartman's home with Hovis driving, Kelly in the front passenger seat and Hatch, Marks, and Johnston in the backseat with Hartman lying across them. A neighbor observed the incident and called the police.

The group drove twenty minutes to a deserted field, during which time Kelly and Johnston continued to berate Hartman while the group stripped Hartman of her personal belongings, including her shirt, shoes, pants, socks, underwear, and watch. Hatch held a lit cigarette close to Hartman's naked body while Hartman cried and begged the group not to hurt her. When they arrived at the field, everyone exited the car and Hartman stood naked in front of Kelly and Johnston. Kelly hit Hartman again in the face with her fist, knocking Hartman down, and Kelly and Johnston proceeded to hit and kick Hartman as she lay on the ground. Kelly asked Hartman if she would date a fat man or an ugly man, to which Hartman responded she would do anything as long as the group left her alone. Hovis approached Hartman with a black handgun and ordered Hartman to put it in her mouth. Hatch took the gun from Hovis and made Hartman, who was kneeling, put it in her mouth again. Hatch then shot Hartman, who died of a single gunshot wound to the head through the mouth. As

the group returned to the car, Kelly asked Hatch if he had shot Hartman "execution style." *Transcript* at 338.

Afterwards, the group decided to obtain gasoline to burn Hartman's body and cover-up the crime. They drove to a gas station and Kelly purchased gasoline for the car, a gas can with gasoline, soft drinks, and snacks. When they returned to the field, Kelly and Johnston looked unsuccessfully for Hartman's shoes while Hovis and Hatch poured gasoline on Hartman's body and lit it on fire. The group then drove to Auburn, Indiana, where Kelly had a friend who owed her money. After speaking with her friend on the front porch, Kelly asked to use the restroom and told her friend that her shoes were muddy because her car had gotten stuck in a ditch. The group left the home and drove to Detroit. On the way, they stopped at a service station in Angola, Indiana, where Hatch lit Hartman's underwear on fire causing the station attendant to call the police. That night, the group stayed at a hotel in Detroit and headed back to Indiana the following morning. Police had issued an Amber Alert for Hartman, which contained a description of Kelly's car, and the group was apprehended on a highway near Auburn. Police located the murder weapon in Marks's pants.

Hovis eventually led police to Hartman's body, where tire tracks matching Kelly's car as well as shoe prints consistent with the group members' shoes were located. Hartman's watch was also located in Kelly's car. Kelly initially denied knowing anything about Hartman, but eventually confessed her involvement.

The State charged Kelly with felony murder (premised on robbery), criminal confinement, battery, criminal gang activity, abuse of a corpse, robbery, and assisting a criminal. After a four-day trial, the jury found Kelly guilty on all counts. At her sentencing, the trial court merged Kelly's robbery count with the felony murder count and reduced the criminal confinement count from a class B felony to a class D felony. Kelly received an aggregate seventy-five-year sentence.

## 1.

On appeal, Kelly asserts that the State presented insufficient evidence to support her convictions for felony murder, criminal confinement, criminal gang activity, and assisting a criminal. Specifically, Kelly claims that the State failed to provide sufficient evidence of: (1) Kelly's intent to deprive Hartman of her property; (2) criminal confinement as a class B felony; (3) Kelly's active membership in a group of five or more members with the intent to further criminal goals; and (4) the applicability of the charge of assisting a criminal, based on her involvement in the underlying crimes. Our standard of review in sufficiency of the evidence claims is well settled:

> We will not reweigh the evidence or consider the credibility of witnesses. Only the evidence most favorable to the verdict together with all reasonable inferences that can be drawn therefrom will be considered. If a reasonable trier of fact could have found the defendant guilty based on the probative evidence and reasonable inferences drawn therefrom, then a conviction will be affirmed.

*King v. State*, 799 N.E.2d 42, 46 (Ind.Ct. App.2003) (citation omitted).

 To convict Kelly of felony murder premised on robbery, the State was required to prove beyond a reasonable doubt that Hartman was killed while Kelly, acting in concert with other members of the group, knowingly or intentionally took property from Hartman through use of force or putting Hartman in fear. *See* I.C. § 35–42–1–1; I.C. § 35–42–5–1 (West

1998). A felony murder conviction requires proof of intent to commit the underlying felony but not of intent to kill. *See, e.g., Luna v. State,* 758 N.E.2d 515 (Ind. 2001).

 Kelly claims that in addition to the elements enumerated in the robbery statute,[6] the State was required to present evidence of Kelly's intent to deprive Hartman of her property. Kelly asserts the State failed to demonstrate this element since it conceded that "the motive for taking of [Hartman's] personal property was for humiliation and revenge," and therefore, per Kelly, "there is no reason to believe that [Kelly] intentionally deprived the victim of her personal items." *Appellant's Brief* at 12. Kelly's argument is unpersuasive.

Here, the State presented evidence that upon hearing about Hartman's alleged threat to Hatch and flirtation with Hovis, Kelly and the group formulated a plan to take Hartman to a deserted location, beat her, and make her walk home naked. The group traveled to Hartman's home where Kelly and Johnston assaulted Hartman before she was dragged into Kelly's car. Further, the State offered evidence that Kelly's hands were swollen from beating Hartman, that the group stripped Hartman of her personal belongings, including a watch later located in the glovebox of Kelly's car, and that Hartman begged the girls and the group to not hurt her. Photographic exhibits presented at trial also demonstrated that Hartman was naked when the police located her body. Kelly does not refute this evidence. Rather, she argues that the State failed to prove she intended to deprive Hartman of her property, an inferred element of robbery. Kelly concedes, however, that her intent was to assault Hartman and force her to walk home naked. We fail to see how Kelly could have accomplished her purpose *without* depriving Hartman of her personal belongings, namely, her clothing. Thus, even assuming the State needed to prove an intent to deprive, the probative evidence and reasonable inferences support just such a finding. The evidence was sufficient to support Kelly's conviction for felony murder premised on robbery.

Kelly also asserts that the State presented insufficient evidence to sustain a conviction for criminal confinement as a class B felony, which requires proof of a serious bodily injury. *See* I.C. § 35–42–3–3. The trial court, however, entered judgment of conviction and sentenced Kelly for criminal confinement as a class D felony, requiring the State to prove beyond a reasonable doubt that Kelly knowingly or intentionally confined Hartman without Hartman's consent or removed Hartman by force or threat of force from her home to the field. *See id.* Since Kelly was not convicted of criminal confinement as a class B felony, her argument in this regard—that the State presented insufficient evidence that Hartman suffered serious bodily injury—is moot.

Kelly's challenge to her criminal gang activity conviction is also unavailing. Kelly claims that the State presented insufficient evidence that she was an active member of a group of five or more members

---

**6.** I.C. § 35–42–5–1 states:
 A person who knowingly or intentionally takes property from another person or from the presence of another person:
 (1) by using or threatening the use of force on any person; or
 (2) by putting any person in fear;

commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant, and a Class A felony if it results in serious bodily injury to any person other than a defendant.

that had the specific intent to further criminal goals. I.C. § 35–45–9–3 makes it a class D felony for a person to "knowingly or intentionally actively participate[ ] in a criminal gang." I.C. § 35–45–9–1 (West 1998) defines a "criminal gang" as:

> [A] group with at least five (5) members that specifically:
> (1) either:
> (A) promotes, sponsors, or assists in; or
> (B) participates in; or
> (2) requires as a condition of membership or continued membership; the commission of a felony or an act that would be a felony if committed by an adult or the offense of battery (IC 35–42–2–1).

Our courts have interpreted this statute to require proof that a person:

> (1) is an active member of a group with five or more members which, promotes, sponsors, assists in, or participates in or requires as a condition of membership or continued membership the commission of a felony or an act that would be a felony if committed by an adult or a battery, (2) has knowledge of the group's criminal advocacy, and (3) has a specific intent to further the group's criminal goals.

*Robles v. State*, 758 N.E.2d 581, 584 (Ind. Ct.App.2001).

 Here, the State presented undisputed evidence that on August 19 the group of five formulated a plan to assault Hartman, rob her of her personal belongings, take her to a field, and force her to walk home naked. To that end, the group investigated what time Hartman would be arriving home and specifically decided not to confront her in the Arby's parking lot because police could be present. Kelly and Johnston laid in wait for Hartman in the bushes while Hatch, Hovis, and Marks watched from a distance. After beating Hartman, forcibly removing her personal belonging, driving her to a secluded location, and killing her, the group decided to burn her body to cover-up their crime. They purchased gasoline, returned to the body and set it afire while searching for Hartman's shoes to hide evidence of their involvement. Kelly actively participated in the group's commission of multiple felonies, had knowledge of the group's stated purpose of carrying out the felonies, and demonstrated the specific intent to further these criminal goals by, *e.g.*, assaulting Hartman, allowing use of her car to transport Hartman to the field, purchasing gasoline to burn Hartman's body, attempting to locate Hartman's shoes to dispose of evidence, and fleeing with the group to Detroit. While admittedly, no evidence was presented that the instant group possessed traits commonly associated with a traditional street gang, *e.g.*, a name, symbolic colors, or initiation rituals, the facts of this particular case amply satisfy the statutory elements of the offense.[7] A reasonable jury could determine that Kelly was guilty of criminal gang activity.

 Finally, Kelly claims there was insufficient evidence to convict her of assisting a criminal. I.C. § 35–44–3–2 states:

---

7. We find additional support for this position from the legislature's 1994 amendment of the criminal gang statute which substituted "or" at the end of 1(B) for "and." I.C. § 35–45–9–1 ("a group with at least five (5) members that specifically: (1) either: (A) promotes, sponsors, or assists in; or (B) participates in; or (2) requires as a condition of membership or continued membership; the commission of a felony or an act that would be a felony if committed by an adult or the offense of battery (IC 35–42–2–1)")(emphasis added). We interpret use of the disjunctive "or" as an intent to broaden the statute's scope to situations beyond those commonly associated with traditional street gangs.

A person not standing in the relation of parent, child, or spouse to another person who has committed a crime or is a fugitive from justice who, with intent to hinder the apprehension or punishment of the other person, harbors, conceals, or otherwise assists the person commits assisting a criminal, a class A misdemeanor. However, the offense is: (1) a class D felony if the person assisted has committed a Class B, Class C, or Class D felony; and (2) a class C felony if the person assisted has committed murder or a Class A felony or if the assistance was providing a deadly weapon.

Kelly asserts that this section is inapplicable to her based on our supreme court's holding in *Smith v. State,* 429 N.E.2d 956 (Ind.1982). In *Smith,* our supreme court set aside a conviction for assisting a criminal, holding that the defendant and his co-participant could not have carried out their common plan of robbery and resulting murder without giving aid and assistance to each other in such accomplishment: "[t]he fact that following the accomplishment of the robbery and murder they attempted to conceal their crime by painting the automobile and changing the license plates was merely a continuation of their common scheme and plan, and under the circumstance did not constitute a separate offense." *Id.* at 959. Our supreme court has further explained that I.C. § 35–44–3–2 "was intended to apply to a person who did not actively participate in the crime itself, but rather assisted a criminal after the fact." *Wright v. State,* 690 N.E.2d 1098, 1108 (Ind.1997); *see also Hauk v. State,* 729 N.E.2d 994 (Ind.2000).

At trial, the State argued that Kelly bought the gas to burn the body, traveled to Detroit with Hatch in her car, and initially lied to police about the group's involvement in Hartman's death in order to assist Hatch. In its brief, the State concedes that based on the principle of

*Smith v. State,* 429 N.E.2d 956, as interpreted by *Wright v. State,* 690 N.E.2d 1098, Kelly could not be convicted of both felony murder and the separate offense of assisting a criminal. We agree and remand to the trial court with instructions to set aside Kelly's conviction of assisting a criminal and to revise her sentence accordingly.

2.

 Kelly claims that the trial court erred in refusing her tendered jury instructions on felony murder and criminal confinement.

The well-settled standard by which we review challenges to jury instructions affords great deference to the trial court. *State v. Snyder,* 732 N.E.2d 1240, 1244 (Ind.Ct.App.2000). The manner of instructing the jury lies within the trial court's sound discretion. *Id.* Thus, the trial court's ruling will not be reversed unless the instructional error is such that the charge to the jury misstates the law or otherwise misleads the jury. *Id.* Jury instructions must be considered as a whole and in reference to each other; even an erroneous instruction will not be error if the instructions taken as a whole do not misstate the law or otherwise mislead the jury.

*Lewis v. State,* 759 N.E.2d 1077, 1080 (Ind.Ct.App.2001). In determining whether the trial court abused its discretion regarding challenges to jury instructions we will consider: (1) whether the tendered instruction incorrectly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and (3) whether the substance of the instruction was covered by other instructions that were given. *Lampkins v. State,* 778 N.E.2d 1248 (Ind.2002).

The felony robbery instruction given by the trial court stated, in relevant part:

The crime of Felony Murder is defined by statute as follows:

A person who kills another human being while committing or attempting to commit Robbery, commits Murder, a felony,

To convict the defendant of Count I, Felony Murder, the State must prove each of the following elements:

The defendant, Rheann E. Kelly,

1. while acting in concert with Christine Johnston, and/or Christopher Hovis, and/or Brett Marks, and/or Ronrico Hatch

2. killed

3. another human being to wit: Cheri Hartman

4. while committing or attempting to commit Robbery.

*Appellant's Appendix* at 133. The trial court also instructed the jury on the elements of robbery, the felony upon which the felony murder charge was premised, as follows:

The crime of Robbery is defined in part by statute as follows:

A person who knowingly or intentionally takes property from another person or from the presence of another person by using or threatening the use of force on any person or by putting any person in fear, commits Robbery. The offense is a class A felony if it results in serious bodily injury to any person other than a defendant.

To convict the defendant of Count II, Robbery, the State must prove each of the following elements:

The defendant Rheann Kelly:

1. while acting in concert with Christine Johnston, and/or Christopher Hovis, and/or Brett Marks, and/or Ronrico Hatch

2. knowingly or intentionally

3. took property from another person or in the presence of another person to wit: Cheri Hartman,

4. By using or threatening the use of force or by putting Cheri Hartman in fear and

5. the act of the defendant resulted in serious bodily injury to Cheri Hartman.

*Id.* at 134.

At trial, Kelly requested that the trial court include in its jury instruction for robbery the following additional element:

[A]t the time that [Kelly] took such property she did so with the intent to permanently deprive Cheri Hartman of that property or with the intent to deprive her of that property for an indefinite period of time.

*Id.* at 90. As discussed previously, Indiana's robbery statute contains no such element. Moreover, regardless of the tendered instruction's accuracy, any error in failing to include it would be harmless: "Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." *Dill v. State*, 741 N.E.2d 1230, 1233 (Ind.2001). Kelly argues that:

The admission by the State that the Defendant did not take the clothes for financial purposes, but only for revenge and humiliation, results in a recognition that the Defendant may not have intended to deprive the victim of her personal items. If the jury had been properly informed that the Defendant was not guilty of robbery if she did not intend to deprive the victim of per personal effects, the jury may well have reached the conclusion that this Defendant had no intent of committing a robbery.

*Appellant's Reply Brief* at 6. But Kelly concedes it was the group's plan to confront Hartman, beat her, and force her to walk home naked. Thus, Kelly intended to deprive Hartman of her clothes indefinitely. No evidence in the record supports the illogical conclusion that Kelly planned to return Hartman's personal belongings after the attack was completed. Even if the proffered element had been added to the jury instruction, Kelly's robbery conviction would still be sustained by the evidence and the jury could not have properly found otherwise. The trial court did not err in refusing Kelly's instruction.

Similarly, Kelly claims that the trial court incorrectly refused Kelly's request to include the lesser-included offense of criminal confinement as a class D felony in its jury instruction on the charge. Again, we need not address the merits of this argument as the record reflects that the trial court entered judgment of conviction and sentenced Kelly for criminal confinement as a class D felony *not* a class B felony. Thus, any error in refusing the tendered instruction is harmless. *See, e.g., Foster v. State,* 795 N.E.2d 1078 (Ind.Ct.App.2003).

Judgment affirmed in part, reversed in part, and remanded.

KIRSCH, C.J., and BARNES, J., concur.

### ORDER

On July 14, 2004, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellee, by counsel, has filed a Verified Motion for Publication of Memorandum Decision. The Appellee states that the decision clarifies existing law and therefore meets the criteria for publication pursuant to Appellate Rule 65(A).

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. The Appellee's Verified Motion for Publication of Memorandum Decision is GRANTED and this Court's opinion heretofore handed down in this cause on July 14, 2004, marked Memorandum Decision, Not for Publication is now ORDERED PUBLISHED.

All Panel Judges Concur Without Opinion.