**AMERICAN HOME ASSURANCE CO., Appellant–Defendant,**

v.

**Thomas G. ALLEN, Joe M. Gilstrap, Thomas G. Grier, James H. Nelson, Donald K. Owens, Richard K. Patierno, Richard K. Patierno, Jr., Silvine M. Patierno, and John M. Stone, Appellees–Plaintiffs,**

**Great American Reserve Insurance Co. and Glenn H. Guffey, Appellees–Defendants.**

No. 29A04–0311–CV–570.

Court of Appeals of Indiana.

Sept. 9, 2004.

Rehearing Denied Nov. 17, 2004.

---

Mark D. Gerth, Kightlinger & Gray, LLP, Indianapolis, IN, Attorney for Appellant.

George M. Plews, Jeffrey A. Townsend and John D. Moriarty, Plews Shadley Racher & Braun, Indianapolis, IN, Attorneys for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

American Home Assurance Co. ("American Home") appeals the trial court's grant of summary judgment in favor of insurance agents Thomas G. Allen, Joe M. Gilstrap, Thomas G. Grier, James H. Nelson, Donald K. Owens, Richard K. Patierno, Richard K. Patierno, Jr., Silvine M. Patierno, and John M. Stone (collectively, "Plaintiffs"). This dispute arose over a professional liability policy issued by American Home with limits of liability of $250,000 for each wrongful act or series of continuous, repeated, or interrelated wrongful acts and $750,000 in the aggregate. American Home contends that the clear and unambiguous language of the insurance policy provides that the coverage is limited to $250,000, not $750,000. Because we find the terms of the policy—*continuous, repeated, or interrelated wrongful acts*—to

be ambiguous, we strictly construe them against the insurer, American Home, and in favor of maximum coverage. We therefore affirm the trial court.[1]

### Facts and Procedural History

This is an appeal from a summary judgment order determining the policy limits of a Life Insurance Agents and Brokers Professional Liability Policy ("the Policy") issued by American Home Policy No. 2417052 to Glenn Guffey. The Policy provides that its limits of liability are $250,000 for "Each Wrongful Act or series of *continuous, repeated or interrelated Wrongful Acts*" or $750,000 in the aggregate. Appellant's App. p. 74 (emphasis added). The Policy did not define the terms "continuous, repeated or interrelated."

The relevant facts are that Plaintiffs are life insurance agents in North or South Carolina. Over the course of seven years, life insurance agent Glenn Guffey recruited Plaintiffs to sell the Flex II annuity, a tax-deferred annuity offered by Great American Reserve Insurance Co. ("Great American").[2] In exchange for annual premiums, the Flex II promised annuity income in the future. Guffey individually trained Plaintiffs, and part of that instruction included telling them that the Flex II had no front-end load, meaning that no commission or other fees would reduce the amount of premiums used to build up the value of the policy. In fact, the Flex II did have a front-end load. After some of Plaintiffs' customers complained about misrepresentations in the sale of the Flex II, the South Carolina Department of Insurance launched an investigation. As a result of the investigation, most of the nine

---

1. We hereby deny Plaintiffs' Petition for Oral Argument.

2. The Flex II annuity was initially offered by Jefferson National Life, which subsequently merged into Great American, a Texas life insurance company with its principal office in Indiana. Great American succeeded to Jefferson's policies. For purposes of convenience, we refer to the annuities as those of Great American.

Plaintiffs entered into consent decrees with the department admitting that they had misrepresented the Flex II as to the existence of a front-end load.

Plaintiffs initiated this suit in the Hamilton Circuit Court, asserting twelve counts against Guffey and Great American. The substance of many of these claims is that Plaintiffs incurred liability to their customers and costs of regulatory proceedings and defense of civil lawsuits, all as a result of Guffey's and Great American's misrepresentations that the Flex II had no front-end load.[3]

Because the allegations of the lawsuit centered on Guffey's professional liability, American Home, as Guffey's insurer, represented him. In June of 1999, Guffey filed a motion on behalf of American Home, along with a proposed order, requesting leave to tender to the trial court "the remaining policy limits under American Home Assurance Company Policy No. 2417052 to be held by the Court and used towards any judgment or award rendered in the above captioned case." Appellant's App. p. 92. Plaintiffs filed a response in which they agreed that the policy limits should be tendered to the trial court and suggested that the money be held in an interest-bearing account. In the response, to which Guffey did not reply, Plaintiffs also "contend[ed] that the applicable limit under the policy is $750,000." Appellant's App. p. 96. Later that month, the trial court signed Guffey's proposed order but added the condition that the money be held in an interest-bearing account. Specifically, the order provided that "the remainder of the policy limits from American Home Assurance Company Policy No. 2417052 shall be tendered to this Court and held in an interest-bearing account

until such time as a judgment or award is rendered in this case." Appellant's App. p. 99. The order did not specify the amount of the remaining policy limits. Since that order, American Home has not tendered any monies to the trial court.

Thereafter, Plaintiffs filed a Motion to Enforce Court Order, in which it asked the trial court to enforce its Order requiring American Home to tender the remainder of the policy limits to the court. After a hearing on this motion, the trial court took the matter under advisement.

Before ruling on Plaintiffs' Motion to Enforce Court Order, the trial court entered partial summary judgment rulings that the Indiana Supreme Court ultimately affirmed in part, reversed in part, and remanded to the trial court. *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1170 (Ind.2002). On remand, the trial court did not rule on Plaintiffs' Motion to Enforce Court Order.

Plaintiffs sought leave to add American Home as a party, which the trial court granted, and filed an amended complaint. American Home filed an answer asserting four defenses. Plaintiffs then filed a motion for summary judgment against American Home to establish American Home's indemnity obligations under the Policy. Plaintiffs also filed a Second Motion to Enforce Court Order. Following a hearing on these motions, the trial court issued the following order:

> The Policy contains an aggregate limit of $750,000, with a limit of $250,000 for "each wrongful act or series of continuous, repeated or interrelated wrongful acts." The Policy does not define "interrelated wrongful acts." Courts regularly hold that the "interrelated wrong-

---

3. Our Supreme Court has already heard an appeal of this case. *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157 (Ind.2002).

The issue we face today, however, was not before the supreme court in that appeal.

ful acts" language is ambiguous and must be construed to provide maximum coverage. The American Home policy is ambiguous as a matter of law. The claims asserted by the Plaintiffs in this action against Guffey are separate, distinct claims, and American Home is obligated to pay under its Policy an amount up to ... the aggregate limit of $750,000.

On June 30, 1999[,] this Court ordered defendant Guffey and American Home to tender to this Court the remainder of the policy limits from the American Home Policy. The remaining amount of the aggregate limit of the Policy, as of June 30, 1999, should have been tendered to the Court at that time. Despite this Court's Order, the remainder of the Policy limits was not tendered to the Court.

Appellant's App. p. 23. Accordingly, the trial court entered summary judgment in favor of Plaintiffs and ordered American Home to tender an amount up to the aggregate limit of $750,000 to the court within twenty days. The trial court stated that the funds would be held in an interest-bearing account "until such time as a judgment or award is rendered in this case. The proceeds shall be released and disbursed according to the judgment and award." *Id.* American Home appeals this order.

## Discussion and Decision

American Home contends that the trial court erred in granting summary judgment in favor of Plaintiffs. "The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law." *Bushong v. Williamson,* 790 N.E.2d 467, 474 (Ind.2003). On appeal, our standard of review is the same as that of the trial court: summary judgment is appropriate only where the evidence

shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 473. We construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party. *Id.* On appeal, the trial court's order granting or denying a motion for summary judgment is cloaked with a presumption of validity. *Sizemore v. Erie Ins. Exch.,* 789 N.E.2d 1037, 1038 (Ind.Ct.App.2003). A party appealing from an order granting summary judgment has the burden of persuading the appellate tribunal that the decision was erroneous. *Id.* at 1038–39.

Insurance contracts are governed by the same rules of construction as other contracts. *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 667 (Ind.1997); *see also Bowers v. Kushnick,* 774 N.E.2d 884, 887 (Ind.2002). Proper interpretation of an insurance policy, even if it is ambiguous, generally presents a question of law that is appropriate for summary judgment. *Guzorek,* 690 N.E.2d at 667. Clear and unambiguous policy language must be given its ordinary meaning. *Id.* However, where there is an ambiguity, insurance policies are to be construed strictly against the insurer. *Am. States Ins. Co. v. Kiger,* 662 N.E.2d 945, 947 (Ind.1996), *reh'g denied.* "This strict construal against the insurer is driven by the fact that the insurer drafts the policy and foists its terms upon the customer." *Id.* "The insurance companies write the policies; we buy their forms or we do not buy insurance." *Id.*

Failure to define a term in an insurance policy does not necessarily make it ambiguous. *Guzorek,* 690 N.E.2d at 667. Rather, an insurance policy is ambiguous only if a provision is susceptible to more than one reasonable interpretation. *Id.* Additionally, an "ambiguity is not affirmatively established simply because contro-

versy exists and one party asserts an interpretation contrary to that asserted by the opposing party." *Beam v. Wausau Ins. Co.,* 765 N.E.2d 524, 528 (Ind.2002), *reh'g denied.*

Here, the Declarations Page of the Policy provides that its limits of liability are $250,000 for "Each Wrongful Act or series of continuous, repeated or interrelated Wrongful Acts" or $750,000 in the aggregate. Appellant's App. p. 74. There is also a Limits of Liability special provision in the Policy, which provides:

> The limit of liability stated in the Declarations as applicable to "Each Wrongful Act or series of continuous, repeated or interrelated Wrongful Acts" is the limit of the Company's liability for all amounts payable hereunder in settlement or satisfaction of claims, judgements or awards and defense costs, charges and expenses arising out of the same Wrongful Act or series of continuous, repeated or interrelated Wrongful Acts, without regard to the number of insureds, claims, demands, suits or proceedings or claimants.

Appellant's App. p. 78. Thus, under the terms of the policy, only $250,000 is available to satisfy claims arising out of the "same Wrongful Act or series of continuous, repeated or interrelated Wrongful Acts" regardless of the number of insureds, claims, demands, suits, proceedings, or claimants. *Id.*

■ American Home argues that according to the clear and unambiguous language of the Policy, Guffey's alleged misrepresentations to each of the nine Plaintiffs that the Flex II did not have a front-end load arose out of a "series of continuous, repeated or interrelated Wrongful Acts" such that the limit of liability is only $250,000. Plaintiffs, on the other hand, argue that the trial court correctly determined that the Policy lan-

guage is ambiguous and therefore the limit of liability should be construed in their favor to provide maximum coverage. Each of the parties focus their arguments primarily on the term "interrelated."

Plaintiffs direct our attention to the only three published cases that construe the term "interrelated." In each of these cases, the ruling court determined that the term "interrelated" was ambiguous and construed the insurance policy in favor of the insured. In the first of these cases, *McCuen v. American Casualty Co.,* 946 F.2d 1401 (8th Cir.1991), one of the issues before the Eighth Circuit was the insurance policy's liability limits. The policy provided that its limits were $1 million for a single loss and $10 million in the aggregate. The policy stated that "[c]laims based on or arising out of the same act, interrelated acts, or one or more series of similar acts ... shall be considered a single Loss[.]" *Id.* at 1407. American Casualty argued that seventeen separate loan transactions to three separate borrowers were three potential losses. The Eighth Circuit held that the terms "interrelated" and "similar" are "so elastic, so lacking in concrete content, that they import into the contract, in our opinion, substantial ambiguities." *Id.* at 1408. Since the terms of the contract were ambiguous, the court concluded that the meaning of the words became a question of fact and the district court correctly determined that each of the seventeen loans was a separate act. *Id.*

In the second case cited by Plaintiffs, *Home Insurance Co. of Illinois v. Spectrum Information Technologies, Inc.,* the insurance policy contained language strikingly similar to the language at issue here: "all claims arising from the *same wrongful act or interrelated, repeated, or continuous wrongful acts* of the insured shall constitute a single claim." 930 F.Supp. 825, 848 (E.D.N.Y.1996). Commenting on this

policy language, the district court held, "At best, [it] is ambiguous, which requires a construction in favor of the insured." *Id.* The court cautioned that "[e]xpansive phrases such as 'continuous wrongful acts' must have some practical boundary." *Id.* The district court, under the facts of the case, found that the alleged acts were not the same, interrelated, or continuous wrongful acts. *Id.*

Finally, Plaintiffs cite *Sigma Financial Corp. v. American International Specialty Lines Insurance Co.,* 200 F.Supp.2d 697 (E.D.Mich.2001), *reconsideration granted in part on other grounds,* 200 F.Supp.2d 710 (E.D.Mich.2002). In *Sigma,* the insurance policy contained the phrase "interrelated wrongful acts." As in the other cases cited by Plaintiffs, the *Sigma* court found that the term "interrelated" was ambiguous. *Id.* at 706. The court tackled the differences between the terms "interrelated" and "related," a term which other insurance policies used. The court noted that "related" is a commonly understood term while "interrelated" is not. *Id.* at 704. After citing dictionary definitions of the two terms, the court concluded that "interrelated" is more restrictive than "related" "as to what is excluded from the benefits of aggregate coverage." *Id.* Specifically, the court noted that "related" is defined as connected while "interrelated" is defined as having a mutual relationship. *Id.* Based on these definitions, the court stated that "while many situations may be 'related'—connected in some manner—significantly fewer situations will be 'interrelated'—involving a mutual relationship." *Id.* Following this extensive analysis of the differences in the terms "related" and "interrelated," the court determined that the term "interrelated" was ambiguous and construed the policy in favor of coverage for the insured. *Id.* at 706.

American Home also directs our attention to several cases; however, all of these cases involve the term "related" as opposed to "interrelated." [4] In *Gregory v. Home Insurance Co.,* 876 F.2d 602 (7th Cir.1989), the issue before the Seventh Circuit was the limits of liability of an insurance policy. The policy provided that the limits of liability were $500,000 for "Each Claim" and $1,000,000 in the "Aggregate." The policy also provided that:

> *Two or more claims arising out of a single act, error, omission or personal injury or a series of related acts, errors, omissions or personal injuries shall be treated as a single claim.*

*Id.* at 604. In addressing this provision, the Seventh Circuit found that there is a common understanding of the term "related" and that it covers a very broad range of connections, both causal and logical. *Id.* at 606. Accordingly, the court concluded that the term "related" was not ambiguous and therefore affirmed the district court's conclusion that the individual class members' claims constituted a single claim. *Id.*

The term "related" was also found not to be ambiguous in *Continental Casualty Co.*

---

4. Even if we were to find that the terms "related" and "interrelated" had the same meaning, we observe that division of authority on an issue is instructive and is evidence that more than one reasonable interpretation of a term is possible. *Hartford Accident & Indem. Co. v. Dana Corp.,* 690 N.E.2d 285, 295 (Ind.Ct.App.1997), *trans. denied; see also Travelers Indem. Co. v. Summit Corp. of Am.,* 715 N.E.2d 926, 938 (Ind.Ct.App.1999) ("[D]isagreement among the courts further indicates the ambiguity of the [insurance policy's] provisions."). At the very least, there is a division of authority as to whether these terms are ambiguous, which in itself is evidence that more than one reasonable interpretation is possible. *See Hartford,* 690 N.E.2d at 295. This further supports our determination that the term "interrelated" is ambiguous and therefore must be construed in favor of Plaintiffs.

*v. Wendt*, 205 F.3d 1258 (11th Cir.2000). In *Wendt*, the Eleventh Circuit addressed whether the phrase "related wrongful acts" was ambiguous. Acknowledging that the Eleventh Circuit had not yet answered this question, the court noted that "courts outside of the Eleventh Circuit are not in agreement as to the term's ambiguity." *Id.* at 1262. The Eleventh Circuit, however, decided to follow the Seventh Circuit's holding in *Gregory*, which, as noted above, held that "related" is a commonly understood term in everyday language and is therefore not ambiguous. *Id.*

██ Here, we observe that the Policy contains the term "interrelated," not "related." Accordingly, we find that the cases following the Eighth Circuit's opinion in *McCuen*, which involved the term "interrelated," are more on point than the cases following the Seventh Circuit's opinion in *Gregory*, which involved the term "related." Thus, we find the term "interrelated" in this insurance policy to be ambiguous. We do so for a number of reasons. First, unlike the term "related," "interrelated" has no common understanding as to its meaning. Second, the Policy does not define the term. Third, the definition of "interrelated" can be read restrictively or more expansively. The restrictive definition, as defined in *Sigma*, requires mutuality between the wrongful acts while the broader definition requires only parallelism between the wrongful acts.[5] Because of the expansiveness of the definition, we agree with the Eighth Circuit that the term "interrelated" can be interpreted as elastic and without practical boundary.[6] Given this ambiguity, we must strictly construe the term "interrelated" against the insurer, American Home. In so doing, we adopt the restrictive meaning, cited by *Sigma*, which requires a mutual relationship or connection. We find that there is no mutuality between the alleged wrongful acts of Guffey. While the acts all flow from Guffey, the acts do not share any mutuality or interdependence among themselves. In other words, each alleged wrongful act does not impact another act that in turn impacts it. This is particularly so as the acts are scattered over a seven-year period of time. As a result of this strict construal, we conclude that the trial court correctly determined that the claims were separate and distinct acts and the limit of liability available to satisfy any judgment that Plaintiffs may ultimately recover under the Policy is $750,000. We affirm the trial court's grant of summary judgment in favor of Plaintiffs.[7]

Affirmed.

SULLIVAN, J., and MAY, J., concur.

---

5.  One definition of "interrelated" is "parallelism." Webster's Third New International Dictionary 1182 (1993). "Parallelism," in turn, is defined as "resemblance, correspondence, similarity." *Id.* at 1637.

6.  We likewise conclude that the terms "continuous" and "repeated" as used in the Policy are ambiguous. As to the term "continuous," we agree with the *Spectrum* court that "a series of continuous wrongful acts" is an expansive phrase with no practical boundaries. 930 F.Supp. at 848. Furthermore, we agree with the *Spectrum* court that the term "series of repeated acts" is ambiguous. *See id.* As to the phrase "a series of repeated wrongful acts," we observe that the phrase is redundant—the term "series" adds nothing to the meaning of the phrase. "Repeated" can mean in the same form or same substance either to the same individual or to a different individual. For example, if an insurance agent negligently advises one policy holder with respect to one provision of an insurance policy and negligently advises another policy holder with respect to a totally different provision of the same policy, is that a repeated act of negligence or two acts of negligence because different policy provisions are involved? More convincingly, if we define the phrase "series of continuous, repeated, or interrelated wrongful acts" in its broadest sense, we are hard-pressed to think of examples where the insured could qualify for the aggregate policy limits of $750,000.

7. Plaintiffs also contend that American Home waived its right to now assert any policy defenses by requesting leave in 1999 to tender to the trial court the remainder of the policy limits. Essentially, Plaintiffs argue that by offering to tender the remainder of the policy limits to the trial court, American Home conceded it was liable for Guffey's alleged misrepresentations. However, the issue before the trial court on summary judgment was whether the Policy's limits of liability are $250,000 or $750,000. The issue was not Great American's liability. In fact, in its summary judgment order, the trial court instructed American Home to tender to the court "the amount remaining of the $750,000 aggregate limit of the American Home Policy ... to be held [in] an interest-bearing account *until such time as a judgment or award is rendered in this case.*" Appellant's App. p. 23 (emphasis added). Thus, it is evident that the issue of whether American Home is liable for Guffey's alleged misrepresentations has not yet been determined. Accordingly, it is premature to address any potential defenses American Home may have. In any event, the trial court did not make a determination on this point in its summary judgment order, and therefore we express no opinion on it.