**Dale GLASSCOCK and Wayne Moore, Appellants–Third–Party Defendants,**

v.

**Rae CORLISS, Appellee–Third–Party Plaintiff.**

No. 20A05–0404–CV–205.

Court of Appeals of Indiana.

March 10, 2005.

Rehearing Denied May 17, 2005.

Robert J. Palmer, May Oberfell Lorber, South Bend, IN, Joseph J. Jensen, Franklin, TN, Attorneys for Appellants.

Michael F. Deboni, Sara J. MacLaughlin, Yoder Ainlay Ulmer & Buckingham, Patrick F. O'Leary, Goshen, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

After Rae Corliss was terminated from employment, she won a defamation judgment against two executives of her former employer. On appeal, one executive argues that he should have received summary judgment on the defamation claim, but his statements sufficiently imputed criminality or occupational misconduct to merit consideration by a jury. The executives waived their argument that the trial court lacked personal jurisdiction because the defamatory acts occurred outside Indiana by seeking summary judgment on defamation. Their argument that damages were excessive also is unsuccessful because the law allows the jury to presume substantial damages after finding defamation *per se*. We therefore affirm the trial court's judgment.[1]

### Factual and Procedural History

The facts most favorable to the trial court's judgment are as follows: Décor Gravure Corporation employed Corliss for fourteen years. For most of this period, she was national marketing director. On November 21, 1995, the president of Décor Gravure, Dale Glasscock, sent Corliss a letter stating that her employment was terminated and that all unpaid sales commissions were forfeited. The letter stated that some "factors which entered into the decision" to terminate included: (1) Corliss moved her office from a Décor Gravure plant to her home "[c]ontrary to specific instructions" from company personnel and (2) "discrepancies" in Corliss's expense reports.

---

1. The court denies Appellants' motion for oral argument, which stated no reasons supporting the motion. *See* App. R. 34(E)(1).

At a meeting with two designers who worked with Décor Gravure but were not employees, Glasscock said that Corliss was terminated because she had been padding her expenses and buying gifts for family and friends with company money. At the same meeting, company executive Wayne Moore said that Corliss was a liar and a thief. Moore later told the designers in a telephone call that the police were about to arrest Corliss, and he repeated his characterization that she was a liar and a thief in several later telephone calls.

At a different meeting, which included the two designers as well as company sales staff, Glasscock said that Corliss was terminated because of discrepancies in her expense reports and for buying gifts for family and friends. About four years after Corliss was terminated, Moore told employee Bobby Barker that Corliss was a thief.

Moore traveled from Décor Gravure's offices in Alabama to meet with law enforcement officials in Elkhart County to seek investigation of Corliss's expense reports. No charges were ever filed. Some of the losses Décor Gravure claimed from Corliss's conduct were compensated by insurance.

Corliss obtained other work in the manufactured housing industry shortly after leaving Décor Gravure, although for less compensation. Individuals in the industry questioned her and others about whether she was terminated from Décor Gravure for dishonest conduct.

This action originated as an action by Décor Gravure against Corliss in 1996.[2] Corliss counterclaimed for abuse of process, breach of contract, unpaid wages, defamation and retaliatory discharge. She also filed a third-party complaint against Glasscock and Moore individually, alleging defamation and abuse of process.

Only the third-party claims are at issue in this appeal. Glasscock and Moore sought and obtained summary judgment on the abuse of process claims. The defamation claims were tried to a jury in October 2003. The jury found for Corliss against each defendant, awarding $100,000 in compensatory damages and $125,000 in punitive damages against Glasscock and $25,000 in compensatory damages and $50,000 in punitive damages against Moore.

## Discussion and Decision

Glasscock and Moore raise several issues. First, Glasscock argues that summary judgment should have been granted in his favor on the defamation claim because Corliss did not establish a genuine issue of material fact as to whether his statements were defamatory *per se*. Second, Glasscock and Moore argue that the trial court lacked personal jurisdiction over the defamation claim because the defamatory acts took place outside Indiana. Third, they argue that the judgment should be reversed because the trial court gave an instruction on an issue that was not in dispute at trial. Finally, they raise several issues regarding the amount of damages. They argue that the evidence entitles Corliss to only nominal damages. They argue that the evidence requires a single award of damages against Glasscock and Moore jointly. They also argue that the damage award was based on erroneously admitted evidence. We address each issue in turn.

### I. Summary Judgment

■ Glasscock contends that the trial court should have granted summary judgment in his favor on the defamation claim. We review appeals from denial of sum-

---

2. Décor Gravure's initial claims against Cor- liss are not revealed in the appellate record.

mary judgment using the same standard the trial court applies: summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Am. Home Assurance Co. v. Allen*, 814 N.E.2d 662, 666 (Ind.Ct.App.2004), *trans. dismissed.* We construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party. *Id.* On appeal, the trial court's order granting or denying a motion for summary judgment is cloaked with a presumption of validity. *Id.*

In the summary judgment proceeding, Glasscock denied all allegations that he made any statements attributing illegal conduct to Corliss. Corliss designated only one item of evidence purporting to contradict Glasscock's denial. Corliss produced an affidavit by Wanda Wilkes, a designer who worked with Décor Gravure. The affidavit stated:

> [A]s consultants to Décor, my daughter and I were present in a meeting that included about 6 or 7 Décor employees. Mr. Glasscock was at the meeting. He stated to all of the persons at the meeting that Rae Corliss had been fired due to "discrepancies in her expense report." Mr. Glasscock further stated that she had bought gifts for her family and friends. Mr. Glasscock said he was aware that she had been doing this, and let her get away with it for a number of years.

Appellant's App. p. 121. At trial, Corliss presented evidence from a second witness of similar statements by Glasscock, but on summary judgment only Wanda Wilkes' statement supported Corliss's contention against Glasscock. The question is wheth-er this single piece of evidence created a genuine issue of material fact requiring the trial court to deny summary judgment.

■■■ Corliss's theory is that Glasscock's statements, as repeated by Wanda Wilkes, constituted defamation *per se* because they accused Corliss of a crime. To maintain an action for defamation, a plaintiff must show a communication with defamatory imputation, malice, publication, and damages. *Rambo v. Cohen*, 587 N.E.2d 140, 145 (Ind.Ct.App.1992), *trans. denied.* A communication is defamatory *per se* if it imputes criminal conduct. *Street v. Shoe Carnival, Inc.*, 660 N.E.2d 1054, 1058 (Ind.Ct.App.1996). When a statement is capable of either a defamatory or non-defamatory interpretation, the determination is a question of fact for the jury. *Lovings v. Thomas*, 805 N.E.2d 442, 447 (Ind.Ct.App.2004).

■■■ Wilkes' affidavit attributes to Glasscock only two statements about Corliss.[3] According to Wilkes, Glasscock first said that Corliss had been fired because of discrepancies in her expense reports. He then said that Corliss "had bought gifts for her family and friends." Appellant's App. p. 121. Taken literally, the statement about gifts is not defamatory—it indicates that Corliss undertook the laudable conduct of gift-giving. Wilkes did not state explicitly in her affidavit that Glasscock said Corliss bought gifts for her family and friends *with company money.* The only fair inference from Wilkes' affidavit, however, is that the gifts were purchased with company funds, indicating misconduct by Corliss. *See Long v. Durnil*, 697 N.E.2d 100, 104 (Ind.Ct.App.1998) (opining that in defamation case, relevant communication

---

3. Corliss also appears to put weight on the fact that, when Glasscock and Moore met with Wilkes, Glasscock was silent when Moore called Corliss a thief. His silence in relation to this accusation cannot be considered defamatory because it lacks at least the element of publication. *Rambo*, 587 N.E.2d at 145.

is to be viewed in context and given its plain and natural meaning), *trans. denied.*

Mere "discrepancies" in expense reports do not imply criminal conduct, but Glasscock's statements that Corliss used company money to purchase gifts for friends and members of her family do impute criminal conduct. Glasscock's statements, reasonably understood, are that Corliss took company money and used it for purely personal purposes, and that she had done so "for a number of years." Appellant's App. p. 121. These statements are allegations that Corliss intentionally exerted unauthorized control over the company's money in order to deprive the company of its value, which describes the crime of theft as defined by Indiana law. Ind. Code § 35–43–4–2 (defining theft). "If the words were calculated to induce the hearers to suspect that the plaintiff was guilty of the crime, they were actionable." *Street,* 660 N.E.2d at 1059 (quoting *Drummond v. Leslie,* 5 Blackf. 453 (Ind.1840)).

■ This conclusion is bolstered because Glasscock's communication also clearly communicated that Corliss committed misconduct in her trade or business. In addition to criminal conduct, a communication is defamatory *per se* if it imputes: (1) a loathsome disease; (2) misconduct in a person's trade, profession, office, or occupation; or (3) sexual misconduct. *Lovings,* 805 N.E.2d at 447. Both of the comments Wilkes attributed to Glasscock describe purported misconduct by Corliss in her trade or occupation and therefore constitute defamation *per se. See, e.g., Barlow v. Sipes,* 744 N.E.2d 1, 8 (Ind.Ct.App.2001) (holding that accusing auto body shop of breaking car windows to generate repair business is defamatory *per se), trans. denied; Stanley v. Kelley,* 422 N.E.2d 663, 669 (Ind.Ct.App.1981) (finding allegation that employee intended to leave employer and recruit other employees to join competitor could be defamatory *per se* ). Glasscock's statements implied misconduct by Corliss in her business or occupation, providing further support for the trial court's denial of Glasscock's motion for summary judgment.

## II. Personal Jurisdiction

■ Glasscock and Moore also argue that the trial court lacked personal jurisdiction over them as to the defamation claim. They did not raise any objection to personal jurisdiction until after the trial court granted summary judgment in their favor on the abuse of process claim. Once the abuse of process claim was disposed of, the trial court permitted Glasscock and Moore to file an amended answer challenging personal jurisdiction. We review *de novo* whether the trial court had personal jurisdiction over a party. *Anthem Ins. Cos., Inc. v. Tenet Healthcare Corp.,* 730 N.E.2d 1227, 1237–38 (Ind.2000).

Glasscock and Moore base their argument on the undisputed fact that the alleged defamatory statements were not made in Indiana. Because the place where the defamatory statements were made is generally considered the place of the tort, they argue that there is no basis for personal jurisdiction in Indiana. *See* Ind. Trial Rule 4.4 (providing that long-arm jurisdiction extends to persons causing personal injury by an act done within the state).

■ This issue is not as simple as Glasscock and Moore say it is. The issue of personal jurisdiction does not depend solely on the isolated fact that the defamatory statements were made outside Indiana. The defendants' course of conduct could subject them to the personal jurisdiction of Indiana courts even if the specific act complained of occurred outside Indiana. *See, e.g., Saler v. Irick,* 800 N.E.2d 960, 966 (Ind.Ct.App.2003) (stating that defendant's

contacts with the forum state that are unrelated to the basis of the lawsuit may be the basis for general personal jurisdiction). Glasscock's longstanding supervision of employees in Indiana, Moore's briefer supervision of Hoosier employees, or Moore's travel to Indiana to work with the Elkhart County authorities on Corliss's alleged misconduct could constitute sufficient "minimum contacts" to justify personal jurisdiction. *See, e.g., In re Paternity of A.B.*, 813 N.E.2d 1173, 1174–76 (Ind. 2004) (discussing due process analysis for personal jurisdiction).[4]

We need not address this aspect of the jurisdictional issue because Glasscock and Moore waived their objection to personal jurisdiction by seeking affirmative relief in the form of summary judgment on the defamation claim. *Hotmix & Bituminous Equip., Inc. v. Hardrock Equip. Corp.*, 719 N.E.2d 824, 830 (Ind.Ct.App.1999) ("[O]bjection to personal jurisdiction may still be waived if subsequent actions by the defendant go beyond matters of defense and seek affirmative relief from the court."). In this case, Glasscock and Moore sought summary judgment on both claims in the third-party complaint, abuse of process and defamation. This invocation of the trial court's authority estops Glasscock and Moore from questioning the trial court's personal jurisdiction over them. *See Schneider v. Schneider*, 555 N.E.2d 196, 199 (Ind.Ct.App.1990) (holding that a party submits himself to a trial court's personal jurisdiction by seeking affirmative relief).

Glasscock and Moore cite no authority for the proposition that, once they have sought summary judgment on all claims, they may thereafter question personal ju-

risdiction on the surviving claim, and we have found none. They only cite authority for the truism that their post-summary judgment amended answer relates back to the initiation of the third-party action. *See* T.R. 15(C). While their amended answer may address what would otherwise be an untimely introduction of the jurisdictional issue, it does not vitiate the waiver Glasscock and Moore accomplished by invoking the trial court's affirmative authority when they sought summary judgment. The trial court correctly denied Glasscock and Moore's request for judgment on the evidence based on lack of personal jurisdiction.

## III. Jury Instruction

 Glasscock and Moore claim that the following instruction constitutes reversible error because it addressed an issue that was not in dispute at trial:

> A defendant in a defamation case may avoid liability for his defamatory statement if he proves by a preponderance of the evidence that the statement is true. A defendant claiming truth as a defense has the burden of proving that the statements that he made about the plaintiff are true. In the present case, the defendants are not claiming truth as a defense. Accordingly, you must accept as fact that the statements accusing plaintiff of being a thief and stealing from the company, if made by the defendants, were not true.

Appellants' App. p. 672–73. The standard by which we review challenges to jury instructions affords great deference to the trial court. *State v. Snyder*, 732 N.E.2d

---

4. Indiana's "long-arm" jurisdiction now extends to the limit permitted by the Due Process Clause. Trial Rule 4.4(A) (West 2005) ("In addition, a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States"). At the time the defamation occurred, mainly in 1996, the basis for jurisdiction was narrower. Trial Rule 4.4(A) (West 1996) (limiting jurisdiction to acts falling into any of seven enumerated categories).

1240, 1244 (Ind.Ct.App.2000). The manner of instructing the jury lies within the trial court's sound discretion. Thus, the trial court's ruling will not be reversed unless the instructional error is such that the charge to the jury misstates the law or otherwise misleads the jury. *Kelly v. State,* 813 N.E.2d 1179, 1185 (Ind.Ct.App. 2004), *trans. denied.* Jury instructions must be considered as a whole and in reference to each other. In determining whether the trial court abused its discretion regarding challenges to jury instructions we will consider: (1) whether the tendered instruction incorrectly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and (3) whether the substance of the instruction was covered by other instructions that were given. *Id.*

Glasscock and Moore correctly argue that the truth of their statements about Corliss was not at issue in the trial. Glasscock and Moore's theory of the case was that they did not make the statements; they chose not to argue that the statements were true, which would have been inconsistent with their theory of the case. They claim that they were prejudiced by this instruction because "the instruction improperly left the jury with the impression that Glasscock and Moore did not raise truth as an affirmative defense because they could not sustain their burden of proving that defense." Appellants' Br. p. 25.

In this case, where Glasscock and Moore chose not to contest the truthfulness of the relevant statements, the trial court properly gave the disputed instruction so that the jury would not be misled by its absence. The trial court's final instructions indicated that the plaintiff was required to prove that "the defendant knew the words and statements [at issue] to be false or, believing them to be true, acted negligently in failing to determine the[ir] truth ..." Appellants' App. p. 671. In this context, it was proper for the trial court to inform the jury that "the defendants are not claiming truth as a defense" and they must assume the falsehood of the statements "if made by the defendants" to provide the jury with a complete picture of the analysis it had to perform in the jury room.

Without this instruction, the jury would have been left to believe that Corliss had failed to meet her burden to prove the falsehood of the statements or the defendants' recklessness in determining their truth. In the context of all the instructions taken together, the disputed instruction was necessary to provide the jury with a full understanding of its task. Without the disputed instruction, the jury could have been misled by the instructions as a whole. Because the disputed instruction was necessary, in the context of the other instructions, to provide the jury with a complete explanation of the applicable law, the trial court did not err in giving the instruction. As a whole and in reference to each other, the instructions correctly state the law and would not mislead the jury. *Kelly,* 813 N.E.2d at 1185.

Moreover, contrary to Glasscock and Moore's argument, nothing in the instruction indicated that Glasscock and Moore chose not to address the truth of the statements because they could not prove their truth. Indeed, it is contrary to Glasscock and Moore's contention that they never made the statements to even consider whether Glasscock and Moore could prove that they are true.

The trial court therefore did not err in giving the instruction.

### IV. Damages

Glasscock and Moore argue that the jury's damage award is excessive. First, they argue that Corliss proved no compensatory damages, so she is entitled to only

nominal damages on her claim of defamation *per se*. Second, they argue that the award against Glasscock is excessive because there was no proof that any injuries Glasscock caused were separate and distinct from those caused by Moore. Third, they argue that the jury's decision was based on improper evidence. They also argue that alterations in the compensatory damage awards require reduction of the punitive damage awards under Indiana Code § 34–51–3–4, which limits punitive damages to three times compensatory damages.[5]

In reviewing jury determinations of damages, we are deferential to the jury's evaluation. *FMC Corp. v. Brown,* 551 N.E.2d 444, 451 (Ind.1990). The damage award must be rationally based on the evidence and inferences therefrom. *Elkhart Cmty. Schs. v. Yoder,* 696 N.E.2d 409, 413, 416 (Ind.Ct.App.1998). We will vacate an award of damages only when it is not rationally based and "is so small or so great as to clearly indicate that the jury was motivated by prejudice, passion, partiality, corruption, or that it considered an improper element." *City of Carmel v. Leeper Elec. Serv., Inc.,* 805 N.E.2d 389, 393 (Ind.Ct.App.2004).

In this case, Corliss did not introduce evidence of special damages such as lost wages. She only introduced evidence that Glasscock's and Moore's statements tended to raise among those in her industry the issue of her honesty. In cases of defamation *per se*, the jury may presume damages because "[t]he law presumes the plaintiff's reputation has been

damaged, and the jury may award a substantial sum for this presumed harm, even without proof of actual harm." *Rambo,* 587 N.E.2d at 145 (citing *Aafco Heating & Air Conditioning Co. v. Northwest Publ'ns, Inc.,* 162 Ind.App. 671, 321 N.E.2d 580, 589, n. 8 (1974)). We have found no reported Indiana case, however, in which a jury has awarded "a substantial sum" without proof of special damages.

The sole case Glasscock and Moore rely on for their argument that only "nominal" (meaning "trifling," *Black's Law Dictionary* 396 (7th ed.1999)) damages may be awarded for defamation *per se* is not persuasive in light of later, more specific precedent. Their case, *Hotel & Restaurant Employees & Bartenders International Union v. Zurzolo,* 142 Ind.App. 242, 233 N.E.2d 784 (1968), is not a defamation *per se* case, so its recitation of the principle that defamation *per se* is compensable by only nominal damages absent proof of special damages is dictum. This dictum is supported only by reference to a United States Supreme Court case, which was addressing not Indiana law, but rather the narrow issue of defamation in the context of labor disputes under the jurisdiction of the National Labor Relations Board. *Id.* at 790 (citing *Linn v. United Plant Guard Workers of Am., Local No. 114,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966)). Moreover, *Zurzolo* predates *Rambo* and other cases clarifying that "substantial" damages may be awarded for defamation *per se* without proof of special damages. *See, e.g., N. Ind. Pub. Serv. Co. v. Dabagia,* 721 N.E.2d 294, 305–06 (Ind.Ct.App. 1999) ("The law presumes that the plain-

---

**5.** The issue of excessiveness of the jury verdict must be raised by motion to correct error in order to be preserved for appeal. T.R. 59(A)(2). The chronological case summary reflects that Glasscock and Moore filed a motion to correct error, but the Appellants' Appendix does not disclose the content of that

motion and therefore does not show that the issue of excessive damages was properly preserved. Because Corliss does not claim that Glasscock and Moore waived the excessive damages issue, we assume that it was properly preserved and address its merits.

tiff's reputation has been damaged, and the judge may award a substantial sum for this presumed harm, even without proof of actual harm."), *trans. denied.*

The jury could have believed that Glasscock's and Moore's statements constituted defamation *per se* and therefore gave rise to presumed damages of a "substantial" amount. The trial court therefore did not err in entering the verdict amounts assessed by the jury.

■■■■ Glasscock and Moore also argue that the amount of damages assessed against Glasscock was excessive because there was no showing that any damages caused by Glasscock were separate from the injuries caused by Moore. When, as in this case, the jury could conclude that the separate acts of two individuals led to separate injuries, each tortfeasor is liable for the damage done by that tortfeasor's actions. *Depew v. Burkle,* 786 N.E.2d 1144, 1147 (Ind.Ct.App.2003).

Here, the evidence supported the jury's finding of separate injuries arising from separate actions by the two defendants. Witnesses testified to separate statements by Glasscock and Moore, on separate occasions to separate audiences, that the jury could have determined to be defamatory. As Corliss suggests, Glasscock's longstanding reputation in the manufactured housing industry could have given added heft to his comments, making them more damaging to Corliss in the jury's eyes.[6] Moreover, the specificity of Glasscock's comments, referring to specific acts rather than using general terms like Moore's use of "thief," could also be viewed as more damaging. Because the evidence supports

separate damage amounts for each defendant, we find no error.

■■■■ The third issue Glasscock and Moore raise relating to damages is that the jury based its decision on improper evidence, specifically evidence of the amount of commissions Corliss forewent when she was terminated and the amount of money Glasscock made when he sold the company. Indiana Evidence Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We examine issues of admissibility giving deference to the trial court's discretion, finding error only when the trial court's action is clearly erroneous. *Laudig v. Marion County Bd. of Voters Registration,* 585 N.E.2d 700, 708 (Ind.Ct. App.1992).

■■■■ Evidence that Corliss claimed $49,000 in commissions was admitted at trial with a limiting instruction, as provided by Evidence Rule 105.[7] Corliss argued that the evidence was relevant to show a possible motive for sullying her reputation. Appellant's App. p. 278 ("[F]orty-nine thousand dollars is a good motive to fabricate a position that someone is a thief and you don't have to pay them."). Moreover, the trial court instructed the jury that the amount was irrelevant to damages. *Id.* at 420–21. We cannot say that this reasoning for admission is erroneous, especially with the limiting instruction. Glasscock's economic worth is relevant to the jury's assessment of punitive damages, *Stroud v. Lints,* 760 N.E.2d 1176, 1183 (Ind.Ct.App. 2002), so its admission is not erroneous.

---

6. "He was a captain of the laminated wall board industry." Appellee's Br. p. 21.

7. "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and admonish the jury accordingly."

Because Glasscock and Moore's final argument regarding damages depends upon the success of one of the first three arguments, we need not address it.

The trial court's judgment is affirmed.

KIRSCH, C.J. and NAJAM, J., concur.